UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| CHRISTOPHER W., § § | |
| Plaintiff, § § | |
| v. § | Case # 6:20-cv-6905-DB |
| § | |
| COMMISSIONER OF SOCIAL SECURITY, § | MEMORANDUM |
| § | DECISION AND ORDER |
| Defendant. § | |

## INTRODUCTION

Plaintiff Christopher W. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner"), that denied his application for supplemental security income ("SSI") under Title XVI of the Act. *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 16).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 13, 14. Plaintiff also filed a reply brief. *See* ECF No. 15. For the reasons set forth below, Plaintiff's motion for judgment on the pleadings (ECF No. 13) is **DENIED**, and the Commissioner's motion for judgment on the pleadings (ECF No. 14) is **GRANTED**.

## BACKGROUND

Plaintiff protectively filed an application for SSI on May 2, 2018, alleging disability beginning November 30, 2016 (the disability onset date), due to depression; schizophrenia; chronic migraines; neck and back pain; learning disability; attention disorder; acid reflux disease; limited reading ability; and dyslexia. Transcript ("Tr.") 16, 41-164-68, 214. Plaintiff's claim was denied

initially on August 27, 2018, after which he requested an administrative hearing. Tr. 16. On December 12, 2019, Administrative Law Judge Asad Ba-Yunus (the "ALJ") conducted a video hearing from Albany, New York. *Id*. Plaintiff appeared and testified from Rochester, New York, and was represented by Peter Siracuse, a non-attorney representative. *Id*. Peter A Manzi, an impartial vocational expert ("VE"), also appeared at the hearing. *Id*.

The ALJ issued an unfavorable decision on January 21, 2020, finding that Plaintiff was not disabled. Tr. 16-28. On September 2, 2020, the Appeals Council denied Plaintiff's request for further review. Tr. 1-6. The ALJ's January 21, 2020 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

### II. The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71

2

(1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id*. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id*. § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national

economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in his January 21, 2020 decision:

1. The claimant has not engaged in substantial gainful activity since May 2, 2018, the application date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: migraine headaches; depression; and a history of a learning disorder (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. The claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b)[1] except that he may occasionally climb ladders, ropes, and scaffolds; may have up to occasional exposure to all hazards, including unprotected heights and dangerous machinery; can tolerate up to a moderate level of noise, as well as a moderate level of lighting; can perform semi-skilled tasks; and can tolerate occasional changes to a routine work setting.

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born on April 14, 1987 and was 31 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since May 2, 2018, the date the application was filed (20 CFR 416.920(g)).

Tr. 16-28.

Accordingly, the ALJ determined that, based on the application for supplemental security benefits protectively filed on May 2, 2018, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act. Tr. 28.

## ANALYSIS

Plaintiff's sole point of error is that the ALJ failed to properly evaluate opinion evidence pursuant to the regulations. *See* ECF No. 13-1 at 17. Specifically, Plaintiff argues that ALJ erred because he failed to find persuasive opinions from Plaintiff's treating psychiatrist Muhammed Dawood, M.D. ("Dr. Dawood"), treating mental health counselor Thomas Peechatt, LMHC ("Mr. Peechatt"), and psychiatric consultative examiner Adam Brownfeld, Ph.D. ("Dr. Brownfeld"). *See id*. at 17-28. According to Plaintiff, the ALJ should have found these opinions persuasive because they were supported by and consistent with the evidence and had the limitations in these opinions been incorporated into the RFC, the ALJ would have been required to find Plaintiff disabled. *See id*.

The Commissioner argues in response that the ALJ properly evaluated the opinion evidence throughout the sequential evaluation, including at step three and when determining the RFC. *See* ECF No. 14-1 at 14-25. The Commissioner maintains that the ALJ appropriately relied on a variety of medical and nonmedical evidence, including treatment notes demonstrating minimal mental findings, opinion evidence, and statements from Plaintiff about his functioning. *See id*. 1t 14-23. Further, argues the Commissioner, because the VE's opinion was properly based

on a hypothetical question that mirrored the ALJ's RFC finding, his testimony that there were jobs existing in the national economy that Plaintiff could perform constituted substantial evidence and, therefore, satisfied the Commissioner's burden at step five. *See id*. at 23-25.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

Upon review of the record in this case, the Court finds that the ALJ appropriately evaluated the evidence of record, including the medical opinion evidence, the treatment notes, Plaintiff's daily activities, and his statements about his functioning, and the ALJ adequately explained his rationale for the persuasiveness attributed to the various medical opinions. Accordingly, the ALJ's conclusion that Plaintiff could perform light work with the limitations noted in the RFC was supported by substantial evidence, and the Court finds no error.

A claimant's RFC is the most he can still do despite his limitations and is assessed based on an evaluation of all relevant evidence in the record. *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); Social Security Ruling ("SSR") 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). At the hearing level, the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. § 404.1546(c); SSR 96-5p, 61 Fed. Reg. 34,471-01 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(d)(2) (stating the assessment of a claimant's RFC is reserved for the Commissioner). Determining a claimant's RFC is an issue reserved to the Commissioner, not a medical professional. *See* 20 C.F.R. § 416.927(d)(2) (indicating that "the final responsibility for deciding

these issues [including RFC] is reserved to the Commissioner"); *Breinin v. Colvin*, No. 5:14-CV-01166(LEK TWD), 2015 WL 7749318, at *3 (N.D.N.Y. Oct. 15, 2015), *report and recommendation adopted*, 2015 WL 7738047 (N.D.N.Y. Dec. 1, 2015) ("It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion.").

Additionally, it is within the ALJ's discretion to resolve genuine conflicts in the evidence. *See Veino v Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002). In so doing, the ALJ may "choose between properly submitted medical opinions." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998). Moreover, an ALJ is free to reject portions of medical-opinion evidence not supported by objective evidence of record, while accepting those portions supported by the record. *See Veino*, 312 F.3d at 588. Indeed, an ALJ may formulate an RFC absent any medical opinions. "Where, [] the record contains sufficient evidence from which an ALJ can assess the [plaintiff's] residual functional capacity, a medical source statement or formal medical opinion is not necessarily required." *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (internal citations and quotation omitted).

Moreover, the ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in [his] decision," because the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971) (the RFC need not correspond to any particular medical opinion; rather, the ALJ weighs and synthesizes all evidence available to render an RFC finding consistent with the record as a whole); *Castle v. Colvin*, No. 1:15-CV-00113 (MAT), 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017) (The fact that the ALJ's RFC assessment did not perfectly match a medical opinion is not grounds for remand.).

Furthermore, the burden to provide evidence to establish the RFC lies with Plaintiff—not the Commissioner. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a); *see also Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) ("The applicant bears the burden of proof in the first four steps of the sequential inquiry . . . ."); *Mitchell v. Colvin*, No. 14-CV-303S, 2015 WL 3970996, at *4 (W.D.N.Y. June 30, 2015) ("It is, however, Plaintiff's burden to prove his RFC."); *Poupore v. Astrue*, 566 F.3d 303, 305-06 (2d Cir. 2009) (The burden is on Plaintiff to show that she cannot perform the RFC as found by the ALJ.).

Effective for claims filed on or after March 27, 2017, the Social Security Agency comprehensively revised its regulations governing medical opinion evidence creating a new regulatory framework. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15, 132-01 (March 27, 2017). Plaintiff filed his application on May 2, 2018, and therefore, the 2017 regulations are applicable to her claim.

First, the new regulations change how ALJs consider medical opinions and prior administrative findings. The new regulations no longer use the term "treating source" and no longer make medical opinions from treating sources eligible for controlling weight. Rather, the new regulations instruct that, for claims filed on or after March 27, 2017, an ALJ cannot "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings(s), including those from [the claimant's own] medical sources." 20 C.F.R. § 416.920c(a) (2017).

Second, instead of assigning weight to medical opinions, as was required under the prior regulations, under the new rubric, the ALJ considers the persuasiveness of a medical opinion (or a prior administrative medical finding). *Id*. The source of the opinion is not the most important factor

8


in evaluating its persuasive value. 20 C.F.R. § 416.920c(b)(2). Rather, the most important factors are supportability and consistency. *Id*.

Third, not only do the new regulations alter the definition of a medical opinion and the way medical opinions are considered, but they also alter the way the ALJ discusses them in the text of the decision. 20 C.F.R. § 416.920c(b)(2). After considering the relevant factors, the ALJ is not required to explain how he or she considered each factor. *Id*. Instead, when articulating his or her finding about whether an opinion is persuasive, the ALJ need only explain how he or she considered the "most important factors" of supportability and consistency. *Id*. Further, where a medical source provides multiple medical opinions, the ALJ need not address every medical opinion from the same source; rather, the ALJ need only provide a "single analysis." *Id*.

Fourth, the regulations governing claims filed on or after March 27, 2017 deem decisions by other governmental agencies and nongovernmental entities, disability examiner findings, and statements on issues reserved to the Commissioner (such as statements that a claimant is or is not disabled) as evidence that "is inherently neither valuable nor persuasive to the issue of whether [a claimant is] disabled." 20 C.F.R. § 416.920b(c)(1)-(3) (2017). The regulations also make clear that, for claims filed on or after March 27, 2017, "we will not provide any analysis about how we considered such evidence in our determination or decision" 20 C.F.R. § 416.920b(c).

Finally, Congress granted the Commissioner exceptionally broad rulemaking authority under the Act to promulgate rules and regulations "necessary or appropriate to carry out" the relevant statutory provisions and "to regulate and provide for the nature and extent of the proofs and evidence" required to establish the right to benefits under the Act. 42 U.S.C. § 405(a); *see also* 42 U.S.C. § 1383(d)(1) (making the provisions of 42 U.S.C. § 405(a) applicable to title XVI); 42 U.S.C. § 902(a)(5) ("The Commissioner may prescribe such rules and regulations as the

9

Commissioner determines necessary or appropriate to carry out the functions of the Administration."); *Barnhart v. Walton*, 535 U.S. 212. 217-25 (2002) (deferring to the Commissioner's "considerable authority" to interpret the Act); *Heckler v. Campbell*, 461 U.S. 458, 466 (1983). Judicial review of regulations promulgated pursuant to 42 U.S.C. § 405(a) is narrow and limited to determining whether they are arbitrary, capricious, or in excess of the Commissioner's authority. *Brown v. Yuckert*, 482 U.S. 137, 145 (1987) (citing *Heckler v. Campbell*, 461 U.S. at 466).

Contrary to Plaintiff's contentions, the ALJ in this case properly analyzed the opinion evidence and the other evidence of record when developing Plaintiff's RFC, and substantial evidence supports the ALJ's finding that Plaintiff retained the capacity for light work limited to semi-skilled tasks, and only occasional changes to a routine work setting. Tr. 23-27. *See* 20 C.F.R. §§ 404.1527, 416.927.

Plaintiff first argues that the ALJ did not properly evaluate the November 2019 medical source opinion form submitted by treating psychiatrist Dr. Dawood and treating therapist Mr. Peechatt (Tr. 549-51).[2] *See* ECF No. 14-1 at 19-25. Dr. Dawood opined that Plaintiff was limited and unable to meet competitive standards for areas of unskilled work, in maintaining attention for two-hour segments; maintaining regular attendance and being punctual within customary strict tolerances; completing a normal workday and workweek without interruption from psychologically based symptoms; responding appropriate to changes in routine work setting; and dealing with normal work stress. Tr. 550.

Dr. Dawood also opined that Plaintiff was seriously limited but not precluded in sustaining an ordinary routine without special supervision; making simple work-related decisions;

---

[2] Although the form was signed by both Dr. Dawood and Mr. Peechatt (*see* Tr. 551), for sake of simplicity, the Court will refer only to Dr. Dawood as the author of the opinion.

10

performing at a consistent pace without unreasonable rest periods; asking simple requests or requesting assistance; and getting along with coworkers or peers without unduly distracting them or exhibiting behavioral extremes. Tr. 550. He further opined that Plaintiff was limited but satisfactory in the remaining areas. Tr. 550. Dr. Dawood also opined that Plaintiff was unable to meet competitive standards setting realistic goals or making plans independent of others. Tr. 551.

When a claimant allegedly suffers mental impairments, the ALJ must assess the claimant's degree of functional limitation resulting from a mental impairment in four broad functional areas identified in Paragraph B of the adult mental disorders listings. *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). These functional areas are: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting or maintaining pace; and (4) adapting or managing oneself. *See id*. Here, the ALJ appropriately incorporated his analysis of the "Paragraph B" criteria into his evaluation of Dr. Dawood's opinion in the RFC portion of the decision. *See Reyes v. Colvin*, No. 13CV4683, 2015 WL 337483, at *19 (S.D.N.Y. Jan. 26, 2015) (finding that "[b]ecause the ALJ's reasoning behind Reyes's RFC assessment reflected the same reasoning he used in assessing the presence of "Paragraph B" criteria [at step three], the ALJ was not required to provide the same reasoning twice."); 20 C.F.R. § 416.922(5). Such is the case here. The ALJ provided a thorough analysis of both objective medical evidence and nonmedical evidence and appropriately cross-referenced his evaluation of the medical opinion evidence with his analysis of the Paragraph B criteria. *Reyes*, No. 2015 WL 337483, at *19 (finding that "the court . . . will not remand where it can look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by substantial evidence" and "the reasoning behind the RFC assessment encompassed the reasoning behind the step three

11

analysis") (citing *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Berry v. Schweiker*, 675 F.2d 464, 464 (2d Cir. 1982)).

The ALJ explained that he found Dr. Dawood's opinion "somewhat partially persuasive" because it was inconsistent with Dr. Dawood's own treatment notes, Plaintiff's longitudinal mental treatment history, Plaintiff's activities of daily living, and the record as whole. Tr. 20-23, 26. *See* 20 C.F.R. § 416.920c(c)(1) (supportability factor), (c)(2) (consistency factor). Specifically, the ALJ found that Dr. Dawood's opinion that Plaintiff was moderately limited in his ability to understand, remember, or apply information and had limited but satisfactory ability to remember work like procedures, and understand, remember, and carry out very short and simple instructions was not persuasive because these limitations were unsupported by objective medical evidence. Tr. 21, 26, 550-51.

As the ALJ noted, intelligence testing[3] demonstrated no such deficits (Tr. 358-59), and Dr. Dawood's mental status examinations demonstrated an average fund of knowledge (Tr. 330, 340, 419, 429, 434, 461, 474, 488), coherent or normal thinking (Tr. 330, 419, 434, 474, 505, 538), and normal attention and concentration (Tr. 461). Tr. 21 24-25, 26. *See* 20 C.F.R. § 416.920c(c)(1) (supportability factor). The ALJ also noted that Dr. Dawood's opinion was inconsistent with other medical evidence, including Dr. Brownfeld's assessment that Plaintiff had no limitation in understanding, remembering, and applying simple and complex directions and instructions, using reasoning and judgment to make work-related decisions, as discussed more fully below. Tr. 21, 355. The ALJ also cited to nonmedical evidence such as Plaintiff's attendance and completion of an online optometry course, and his ability to perform duties associated with being the

---

[3] In August 2018, Dr. Brownfeld administered the Wechsler Adult Intelligence Scale, Fourth Edition ("WAIS-IV"). Plaintiff achieved a verbal comprehension index score of 93; a perceptual reasoning index score of 96; a working memory index score of 89; a processing speed index score of 94; and full-scale IQ score of 92.

administrator of three online social groups. Tr. 21, 338, 344, 350, 458, 467, 472, 481, 495. *See* 20 C.F.R. § 416.920c(c)(1) (supportability factor), (c)(2) (consistency factor).

With respect to interacting with others, the ALJ found no limitation. Tr. 21. The ALJ noted that Plaintiff reported to Dr. Brownfeld that he was able to drive and take public transportation; he reported a limited social life but a good relationship with his family; and his reported hobbies were volleyball, movies, and video games. Tr. 21, 355. As the ALJ noted, Dr. Brownfeld stated that Plaintiff had no evidence of limitation in interacting adequately with supervisors, coworkers, and the public; and no evidence of limitation in maintaining personal hygiene and appropriate attire. *Id*. The ALJ also noted that state agency reviewer S. Juriga Ph.D. ("Dr. Juriga"), similarly determined that Plaintiff had no limitation in this functional area. Tr. 21, 87.

The ALJ found the opinions of Drs. Brownfeld and Juriga to be somewhat persuasive as they were consistent with Plaintiff's reported activities, including travel to Texas in June 2018, attending a conference in April 2019, and (as previously noted) performing as administrator for a number of online social groups, suggesting a significant ability to interact with others. Tr. 21. The ALJ found less persuasive Dr. Dawood's opinion that Plaintiff was "seriously limited" (defined on the form as "less than satisfactory but not precluded in all circumstances") in his ability to work in coordination with or proximity to others without being distracted, getting along with coworkers and peers, and asking simple questions or requesting assistance and was also "limited but satisfactory" in his ability to accept instruction and respond appropriately to criticism from supervisors. Tr. 21, 26, 550-51. The ALJ reasonably concluded that Dr. Dawood' limitations were less persuasive because they were unsupported and inconsistent with the record. Tr. 21, 26.

For example, Plaintiff reported to Dr. Dawood that he was engaging in online studies and social groups, attended the Personalized Recovery Oriented Services ("PROS") program, and

interacted with family, including staying with his brother in Texas for a month. Tr. 338, 458, 472, 486. These activities highlight a greater ability to interact with others than suggested by Dr. Dawood's initial evaluation of Plaintiff in 2016 when he noted that Plaintiff had difficulty meeting new people and being in groups. Tr. 539. During individual therapy sessions with Mr. Peechatt, Plaintiff frequently reported his efforts to coordinate activities and social events for three online groups for which he was an administrator. Tr. 21, 26, 344, 350, 467, 481, 495. As the ALJ noted, the record also reflects that throughout the relevant period, Plaintiff recruited additional administrators for the various groups; engaged with the online community to increase membership; and attended several conferences. *Id*. Thus, the ALJ cited substantial evidence in support of his evaluation of this functional domain.

In the domain of concentrating, persisting or maintaining pace, Dr. Dawood opined that Plaintiff was unable to meet competitive standards for two-hour segments, maintain attendance, be punctual, and complete a normal workday. Tr. 550-51. He also opined that Plaintiff was seriously limited but not precluded from performing work at a consistent pace. *Id*. The ALJ found this portion of Dr. Dawood's opinion to be somewhat persuasive because the evidence supported a finding of moderate limitations. Tr. 22, 26, 550-51. For example, although the record documents Plaintiff's complaints of difficulty concentrating and focusing on his online classes, the record also demonstrates that Plaintiff was able to concentrate, persist, and maintain pace. Tr. 22, 24-26, 437, 439, 492. Plaintiff's vocational rehabilitation counselor noted that, despite facing barriers in completing his online course, Plaintiff was determined to work through these issues to motivate himself. Tr. 633. As previously noted, he also attended the PROS program for a month while simultaneously attending online school and managing his online social groups. Tr. 467, 472. Plaintiff also reported spending a substantial amount of time at home playing video games. Tr.

14

439. Based on the foregoing, the ALJ reasonably found Dr. Dawood's limitations in this functional domain only somewhat persuasive, and his conclusion was supported by substantial evidence.

Finally, with regard to Plaintiff's ability to adapt or manage himself, Dr. Dawood opined that Plaintiff was moderately limited in this area. He further opined that Plaintiff was unable to meet competitive standards in setting realistic goals and making plans independent of others. Tr. 22, 26 referring to Tr. 550-51. He also found Plaintiff was seriously limited but not precluded from dealing with the stress of semiskilled and skilled work. *Id*. The ALJ found Dr. Dawood's overall moderate limitations in this area were generally persuasive as this was generally consistent with the treatment notes and Plaintiff's activities of daily living. The ALJ acknowledged that Plaintiff had a history of suicidal ideation and required emergency medical treatment in May 2019 without extended hospitalization. Tr. 22, 24-26, 289, 330, 389, 501, 503.

The ALJ also properly considered Dr. Brownfeld's opinion that Plaintiff was markedly limited in regulating his emotions, controlling behavior, and maintaining his well-being due to the suicidal ideations in May 2019. Tr. 355. However, the record demonstrated that Plaintiff was able to convey his suicidal ideations and seek appropriate medical attention and treatment. Tr. 22, 24-26, 289, 330, 389, 501, 503. Therefore, the ALJ found Dr. Brownfeld's marked limitations unpersuasive, as they were inconsistent with the bulk of the medical record and Plaintiff's activities of daily living.

The ALJ also reasonably found that the record supported only moderate limitations, as Plaintiff demonstrated an ability to adapt and manage himself. Tr. 22. For example, Plaintiff proactively sought treatment for his concentration issues, seeking to learn how to improve without medication (Tr. 439); he used a planner to schedule his school assignments and study sessions (Tr. 453, 512, 518-19, 521, 546); he recognized the need for and sought extensions to complete his

15

coursework (Tr. 495, 512, 625, 630); and he changed his study environment to minimize distractions (Tr. 546). Tr. 21-22. He also communicated more openly with his treatment providers and family regarding his needs. Tr. 333, 509-10, 518, 521, 640. He completed his online course in November 2019 and was beginning to study for the optometry licensing exam scheduled for May 2020. Tr. 620, 623-24. As noted above, he actively participated and facilitated three online social groups and recruited additional administrators to mitigate his responsibilities. Tr. 344, 350, 467, 481, 495. Given this evidence, the ALJ reasonably concluded that Plaintiff had only moderate limitations in this area. Tr. 22.

Plaintiff's arguments that the ALJ failed to evaluate the supportability and consistency factors when assessing the persuasiveness of Dr. Dawood and Dr. Brownfeld's opinions are also without merit. *See* ECF No. 13-1 at 19-25. As discussed above, in assessing the persuasiveness of these opinions (and in determining Plaintiff's RFC), the ALJ thoroughly considered all the relevant evidence in the case record, including Plaintiff's treatment notes, his contemporaneous statements, his activities of daily living, and the opinion evidence. As explained above, RFC is an administrative finding, not a medical one. Ultimately, an ALJ is tasked with weighing the evidence in the record and reaching an RFC finding based on the record as a whole. *See Tricarico v. Colvin*, 681 F. App'x 98, 101 (2d Cir. 2017) (citing *Matta*, 508 F. App'x at 56). The regulations explicitly state that the issue of RFC is "reserved to the Commissioner" because it is an "administrative finding that [is] dispositive of the case." 20 C.F.R. §§ 404.1527(d), 416.927(d). The ALJ "will assess your residual functional capacity based on all of the relevant medical and other evidence," not just medical opinions. 20 C.F.R. § 404.1545(a); 20 C.F.R. §§ 404.1513(a)(1), (4), 416.913(a)(1), (4) (explaining that evidence that can be considered includes objective medical

evidence, such as medical signs and laboratory findings; as well as evidence from nonmedical sources, including the claimant, such as from forms contained in the administrative record).

Plaintiff further argues that the ALJ failed to assess the consistency of Dr. Brownfeld's opinion for marked limitations regulating emotions, controlling behavior, and maintaining well-being, based on Dr. Brownfeld's assessment of marked limitations in this area due to Plaintiff's recent suicidal ideation. *See* ECF No. 13-1 at 25-27 (citing Tr. 355). As noted above, however, the ALJ articulated his reasoning and cited substantial evidence for finding Dr. Brownfeld's marked limitations unpersuasive, specifically that Plaintiff was able to convey his suicidal ideations and seek appropriate medical attention and treatment, and his activities of daily living demonstrated an ability to adapt and manage himself. Tr. 22, 24-26.

Plaintiff's argument that the ALJ should have given special consideration to Dr. Dawood's opinion because he was a treating source also fails. *See* ECF No. 13-1 at 17-18. Under the new regulatory framework, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from [the claimant's own] medical sources." 20 C.F.R. § 416.920c (a). The regulations stress that the ALJ should consider the supportability and consistency of a medical opinion, as those are the two most important factors in determining the persuasiveness of a medical opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). As previously discussed, the ALJ reasonably found that Dr. Dawood's opinion was not fully supported and consistent with the record. The ALJ discussed and referenced Dr. Dawood's own treatment notes and mental status examination findings and provided ample reasons for his assessment, including lack of support and inconsistency with the longitudinal mental treatment history, lack of hospitalization, intelligence testing, and Plaintiff's activities of daily, as noted above. Tr. 21, 26, 550-51.

Finally, Plaintiff argues that the ALJ's step five finding was not supported by substantial evidence because the ALJ's hypothetical did not fully account for Dr. Dawood and Dr. Brownfeld's moderate and marked limitations and, therefore, should have included additional limitations. *See* ECF No. 13-1 at 27. At step five, the ALJ relied on VE testimony to determine whether jobs exist in the national economy for an individual with Plaintiff's vocational profile, *i.e.*, his age, education and work experience, as well as his RFC. Tr. 27-28, 71-74. In this case, the ALJ presented a hypothetical question to the VE that mirrored the RFC determination, and the expert identified three jobs that such an individual could perform, all of which exist in significant numbers in the national economy. Tr. 23, 71-74; *see* 20 C.F.R. § 416.960(b), 416.966(e).

As the VE's opinion was properly based on his expertise and a hypothetical that mirrored the RFC finding, his identification of work constituted substantial evidence and satisfied the Commissioner's burden at step five. *See Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981)) (ALJ may rely on vocational expert testimony regarding a hypothetical so long as there is substantial evidence to support the assumptions therein and they accurately reflect the claimant's limitations and capabilities); *see also Dumas v. Schweiker*, 712 F.2d 1545, 1553-54 (2d Cir. 1983); *Wavercak v. Astrue*, 420 F. App'x 91, 95 (2d Cir. 2011) ("Because we have already concluded that substantial record evidence supports the RFC finding, we necessarily reject [plaintiff's] vocational expert challenge"). Thus, the ALJ properly evaluated Dr. Dawood and Dr. Brownfeld's opinions in accordance with the regulations, and his findings are supported by substantial evidence in the record. Accordingly, the Court finds no error at step five.

As previously noted, Plaintiff bears the ultimate burden of proving that he was more limited than the ALJ found. *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) ("Smith had a duty to prove a more restrictive RFC, and failed to do so."); *Poupore*, 566 F.3d at 306 (it remains

at all times the claimant's burden to demonstrate functional limitations, and never the ALJ's burden to disprove them). As detailed above, substantial evidence in the record supports the ALJ's RFC finding. When "there is substantial evidence to support either position, the determination is one to be made by the fact-finder." *Davila-Marrero v. Apfel*, 4 F. App'x 45, 46 (2d Cir. Feb. 15, 2001) (citing *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990)). While Plaintiff may disagree with the ALJ's conclusion, Plaintiff's burden was to show that no reasonable mind could have agreed with the ALJ's conclusions, which he has failed to do.

The substantial evidence standard is "a very deferential standard of review – even more so than the 'clearly erroneous' standard," and the Commissioner's findings of fact must be upheld unless "a reasonable factfinder would *have to conclude* otherwise." *Brault*, 683 F.3d at 448 (emphasis in the original). As the Supreme Court explained in *Biestek v. Berryhill*, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted).

For all the reasons discussed above, the Court finds that the ALJ properly considered the evidence of record, including the medical opinion evidence, the treatment notes, and the objective findings, as well as Plaintiff's range of daily activities, and the ALJ's findings are supported by substantial evidence. Accordingly, the Court finds no error.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 13) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 14) is **GRANTED**. Plaintiff's

Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

    **IT IS SO ORDERED**.

*Don D. Bush*
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE